UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAGDALENA DIMITROVA,

                    Plaintiff,

          v.

DEUTSCHE LUFTHANSA
AKTIENGESELLSCHAFT, INC., dba,
LUFTHANSA GERMAN AIRLINES, et al.,

                    Defendants.

CASE NO. 2:25-cv-00956-JHC

ORDER

**I**

**INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion to Compel Discovery.  Dkt. # 18.  The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law.  Being fully advised, for the reasons below, the Court GRANTS the motion.

**II**

**BACKGROUND**

Plaintiff brings this personal injury action under the Montreal Convention.  *See* Dkt. # 1 at 4–5, ¶. 3.1 (citing Convention for the Unification of Certain Rules for International Carriage

ORDER - 1

by Air, May 28, 1999 (Montreal Convention), reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000); *see id.* at 9 ¶ 5.1.  The named Defendants are the corporate entities comprising the German air carrier Lufthansa.  *See* Dkt. # 1 at 3, ¶ 2.2.

On May 31, 2023, Plaintiff suffered injuries on Lufthansa flight 490, en route to Seattle, Washington from Frankfurt, Germany.  *See id.* at 1–2, ¶¶ 1–1.9.  Plaintiff alleges that a monitor fell onto her head from an overhead compartment after a Lufthansa employee opened it.  *Id.* Plaintiff filed this action about two years later.  *See generally* Dkt. # 1.  Defendants deny liability.  *See* Dkt. # 5 at 5–6, ¶¶ 5.1–5.16.

During discovery, Plaintiff served Interrogatory No. 7, seeking the identities and contact information of each passenger on the flight, and Interrogatory No. 8, seeking that information for passengers seated in Plaintiff's row and those rows immediately in front of and behind hers.  *See* Dkt. # 18-1, Ex. 2 at 8–9.  Defendants objected, stating that the interrogatories were unduly burdensome and unlikely to yield relevant information.  *Id.*  At an October 2025 discovery conference, Plaintiff offered to limit her discovery request to the information sought by Interrogatory No. 8 (the passengers seated in her row and those rows immediately in front of and behind hers).  Dkt. # 18-1 at 3, ¶ 7.  But in November, Lufthansa objected on the ground that the European General Data Protection Regulation (GDPR), Council Regulation 2016/679, 2016 O.J. (L 119) 1, or its implementing legislation in Germany, the *Bundesdatenschutzgesetz* or Federal Data Protection Act (FDPA), Federal Law Gazette I p. 2097, *as last amended by* Article 10 of the Act of 23 June 2021 (Federal Law Gazette I, p. 1858; 2022 I p. 1045), prevents disclosure of passenger information.  *See* Dkt. # 18-1, Ex. 3 at 17–18 (email from Lufthansa's counsel to Plaintiff's counsel).  Defendants also said that 14 C.F.R. § 243 similarly prevents disclosure of that information.  *Id.*

ORDER - 2

Plaintiff now moves to compel Defendants to answer Interrogatory No. 8. *See generally* Dkt. # 18.

### III

### DISCUSSION

A.    Legal Standards

Under Federal Rule of Civil Procedure 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

And a party may move a court for an order compelling disclosure or discovery. *See* Fed. R. Civ. P. 37(a)(1). "The court may order a party to provide further responses to an 'evasive or incomplete disclosure, answer, or response.'" *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (citing Fed. R. Civ. P. 37(a)(4)). A court has "broad discretion" to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citation omitted). "Although the party seeking to compel discovery has the burden of establishing that its requests" seek relevant material, the party resisting discovery bears the burden of showing that the discovery should not be permitted. *See Doe*, 329 F.R.D. at 270 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

B.    Analysis

Plaintiff makes three arguments. First, Plaintiff argues that the information she seeks is relevant and neither overly broad nor unduly burdensome for Defendants to produce. *See* Dkt. #

ORDER - 3

18 at 5–6.  Second, Plaintiff contends that 14 C.F.R. § 243 poses no obstacle to Defendants' production, and third, neither do the GDPR or FDPA.[1]  *See* Dkt. # 18 at 6–11.

To the first argument, Defendants argue the information sought is not relevant because the passengers' "testimony is not necessary to determine whether" an object fell onto Plaintiff, which Defendants do not deny.  Dkt. # 19 at 7.  Nor can passengers testify to Plaintiff's injuries, they say.  *Id.*  Second, Defendants say that because this information is not relevant, it is not, under the FDPA, "necessary" to establish a legal claim, a scenario where the FDPA permits disclosure of personal information.  *See id.* at 5–8.  Last, Defendants argue that 14 C.F.R. § 243 prevents disclosure for the same reason.

The Court considers each issue in turn.

1.       Relevance

The identities of the passengers seated near Plaintiff are relevant to her claim.  Those passengers are potential witnesses.  In this context, courts have generally ordered the production of passenger identities when those passengers "may have information about the events at issue in the complaint," without requiring a showing from the moving party as to why those passengers possess specific information that could be relevant.  *Wachuku v. JetBlue Airways Corp.*, 2021 WL 4497157, at *10 (C.D. Cal. Apr. 29, 2021); *see also Xuan Thi Phan v. JetBlue Airways Corp.*, 2017 WL 6622707, at *2 (E.D. Cal. Dec. 28, 2017) (ordering production of identities seated near the plaintiff during in-flight accident).  Defendants do not dispute that Plaintiff has

---

[1] The Court has been unable to locate a version of the GDPR or a trustworthy English-language version of the FDPA on commercial databases.  The Court thus uses the version of the GDPR cited by Plaintiff in her reply brief, on belief that it is apparently accurate.  *See* Dkt. # 20-1, Ex. 1 at 4, art. 6, ¶ 1, (c).  LexisNexis appears to index the FDPA in English but notes that its translation is by machine.  *See* 2017 Global DE LEXIS 352.  Defendants have included excerpts from the FDPA as an exhibit to the Battista Declaration.  *See generally* Dkt. # 19-1, Ex. D.  This text is apparently an official translation by the Language Service of the Federal Ministry of the Interior, an official German government body.  Plaintiff raises no objection to this document.  Thus, the Court considers it to be accurate.

ORDER - 4

no other way to learn the identities of these potential witnesses, which favors production. Dkt. # 19 at 11; Dkt. # 18 at 10. *See Wachuku*, 2021 WL 4497157, at *10; *Jakobot v. Am. Airlines, Inc.*, 2011 WL 13214326, at *2 (S.D. Fla. May 23, 2011) (ordering production of passenger manifest because the "[p]laintiff has no other means of obtaining this information").

Defendants say that passenger testimony is not relevant because these third parties "cannot properly testify regarding the extent, causation, or consequence of Plaintiff's injuries to support her claim." Dkt. # 19 at 7 (citing *Scott v. United States*, 127 F. Supp. 422, 424 (N.D. Fla. 1955) ("[I]t has been consistently held that whether there was a causal connection between an accident . . . [and a sustained injury] . . . is a question with respect to which only medical experts with training, skill, and experience" could testify)). But this objection too narrowly focuses on Plaintiff's injuries. As covered above, courts have permitted the production of passenger identities when those passengers could testify to the broader circumstances of the accident.

2.      14 C.F.R. § 243 does not provide a basis to withhold production

Generally, "[f]ederal law prohibits airline carriers from releasing passenger contact information." *Karrani v. JetBlue Airways Corp.*, 2019 WL 2269817, at *2 (W.D. Wash. May 28, 2019) (citing 14 C.F.R. §§ 243.7(a), 243.9). But this regulation "does not create a special privilege beyond the protections afforded by the rules of civil procedure for a passenger list." *Wallman v. Tower Air, Inc.*, 189 F.R.D. 566, 569 (N.D. Cal. 1999). Courts have thus ordered the production of either entire passenger manifests or just the identities of passengers who witnessed an accident despite the provisions of 14 C.F.R. § 243. *See Braun v. U.S. Airways, Inc.*, 2010 WL 11682520, at *2 (W.D. Wash. June 2, 2010) (Ordering production of identities of passengers to contact potential witnesses); *Wachuku*, 2021 WL 4497157, at *8–10 (same); *Phan*, 2017 WL 6622707, at *1–2 (E.D. Cal. Dec. 28, 2017) (ordering production of identities of passengers who witnessed accident).

ORDER - 5

Defendants furnish no case in which a court blocked the disclosure of passenger information pursuant to 14 C.F.R. § 243. While the *Karrani* court barred the disclosure of the entire passenger manifest under that regulation, it did so by noting that the entire manifest was disproportionate to the needs of the case since the defendant airline had already disclosed the identities of passengers who could be witnesses. *See* 2019 WL 2269817, at *2. Thus, it fits the line of cases permitting disclosure of passenger identities under 14 C.F.R. § 243.

3.    German and European law do not provide a basis to withhold production

Last, the parties dispute whether the FDPA provide a basis to withhold production of the passengers' identities. As pertinent here, the FDPA generally prohibits "data transfers"—which would cover Defendants' disclosure to Plaintiff of passenger identities—except when such a transfer is "necessary . . . in an individual case for the establishment, exercise or defence of legal claim," among other exceptions. *See* Dkt. # 19-1, Ex. D at 22–23 (reproducing FDPA, § 80(1)). This exception is sometimes called the "legal exception" and comes from the underlying GDPR. *See* Dkt. # 20-1 at 4 (GDPR art. 6. ¶ 1, (c)) (data transfer lawful where it "is necessary for compliance with a legal obligation to which the [possessor of the data] is subject").

Thus, because of that legal exception, there is no conflict between an order of this Court compelling Defendants to produce the passenger information and the FDPA. As determined above, the sought-after information is relevant and 14 C.F.R. § 243 does not provide a basis to withhold producing passenger identities. Under the FDPA, Defendants' production of passenger identities and contact information, a covered "data transfer," is "necessary" for the "establishment" or "exercise . . . of [a] legal claim" by Plaintiff, and thus not prohibited by the FDPA. *See* Dkt. # 19-1, Ex. D at 22–23 (FDPA § 80). At least one other federal court has concluded that "there is no conflict between the discovery obligations under the Federal Rules of Civil Procedure and any provision of the German FDPA." *See Knight Cap. Partners Corp. v.*

ORDER - 6

*Henkel Ag & Co., KGaA*, 290 F. Supp. 3d 681, 687 (E.D. Mich. 2017) (granting motion to compel production).  A court has also arrived at this conclusion for the GDPR and its enacting law in France.  *See, e.g.*, *AnywhereCommerce, Inc. v. Ingenico, Inc.*, 2021 WL 2256273, at *1 and n.1 (D. Mass. June 3, 2021) (neither the GDPR nor its French analogue "limit[s] the court's authority to order [the d]efendants to produce the requested evidence" under the legal exception).

But even if the FDPA did prohibit such a data transfer, the Court could still compel Defendants to produce the requested information.  Generally, foreign "blocking statutes" like the FDPA "do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."  *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987).  Instead, these five factors "'are relevant'" in determining whether that statute may excuse a party from producing evidence:

> [1] the importance to the investigation or litigation of the documents or other information requested;
> [2] the degree of specificity of the request;
> [3] whether the information originated in the United States;
> [4] the availability of alternative means of securing the information; and
> [5] the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (citing *Aérospatiale*, 482 U.S. at 544 n. 28 (citing Restatement (Third) of Foreign Relations Law § 442(1)(c)).  And "[a]s the party seeking to rely on German and European Union law, it is [the defendant's] burden to demonstrate that these laws bar production of the documents at issue."  *BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, 2014 WL 3965062, at *4 (N.D. Cal. Aug. 13, 2014).  The Court considers each factor in turn.

ORDER - 7

*The importance of the requested information.*  The Court finds that the requested information is important because without it, Plaintiff would be unable to locate potential witnesses.  *Cf. Est. of Hedayatzadeh by Hedayatzadeh v. Deutsche Lufthansa Aktiengesellschaft*, 2017 WL 6997135, at *2 (N.D. Ga. Mar. 20, 2017) (finding that the first *Aéropostale* factor weighs toward the plaintiffs against same defendant because the plaintiff could use the information "to contact the passengers and gain a better understanding of" the accident).  This factor favors disclosure.

*The degree of specificity of the request.*  The Court finds that Plaintiff's good-faith effort to narrow her request to include only those passengers seated in her row, the row ahead, and the row behind makes that request sufficiently specific.  *Id.; cf. Karrani*, 2019 WL 2269817, at *2 (approving of the defendant's production of "the available contact information for all passengers seated . . . closest" to the accident and those passengers "mentioned in the Incident Reports related to the flight").  Thus, this factor favors disclosure.

*Whether the information originated in the United States.*  The Germany-based Defendants possess the passenger manifest and associate contact information, and so the information here presumably did not originate in the United States.  Thus, this factor weighs against disclosure.

*The availability of alternative means of securing the information.*  The Court finds that Plaintiff has no other means to secure the identities and contact information of the passengers in question.  *See Wachuku*, 2021 WL 4497157, at *10; *Hedayatzadeh*, 2017 WL 6997135, at *2; *Jakobot*, 2011 WL 13214326, at *2.  Thus, this factor favors disclosure.

*The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.*  This factor, that of balancing national interests, is "the

ORDER - 8

most important." *Richmark Corp.*, 959 F.2d at 1476. Courts have arrived at different conclusions when evaluating this factor. The court in *Knight* determined that this factor favored disclosure for two reasons. First, "suffering non-compliance with the plaintiff's discovery requests would fatally undermine the important interest of the United States in rendering an adequately informed decision on the rights of a civil plaintiff." *Knight*, 290 F. Supp. 3d at 690. And this interest "is not outweighed by the concerns of the German government with protecting its citizens from unjustified compromises of their personal information, particularly where the statute on point expressly allows disclosures that are necessary for the purposes of litigation." *Id.* at 691. On the other hand, the court in *Hedayatzadeh* concluded that the "the United States government has no interest in this case and noncompliance would not undermine the interest of the United States" and that "compliance with the production of the passenger list may undermine privacy interests of Germany." 2017 WL 6997135, at *2.

The Court is persuaded by the reasoning of *Knight*. *Hedayatzadeh* concludes that the U.S. government has no interest in the case, but that Germany does because of its privacy interests, presumably evidenced by the FDPA. *Id.* But this does not address that the United States has an interest in its procedural rules and laws, just as Germany has the same interest in the FDPA, as well as in "vindicating the rights of American plaintiffs." *Richmark*, 959 F.2d at 1477. Further, Germany's interest in privacy will be protected by the protective order in place, *see* Dkt. # 16 § 2, which will cover the sought-after information. *See Finjan, Inc. v. Zscaler, Inc.*, 2019 WL 618554, at *3 (N.D. Cal. Feb. 14, 2019) (United Kingdom's interest "in protecting privacy" under GDPR "is diminished where the court has entered a protective order preventing disclosure of the secret information," as here) (citation omitted).

Last, outside the *Aéropostale* factors, "[i]f a foreign company is likely to face criminal prosecution in a foreign country for complying with a United States court order, that is a weighty

ORDER - 9

excuse for nonproduction." *BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, 2014 WL 3965062, at *5 (N.D. Cal. Aug. 13, 2014) (citation omitted).  But the Court is not persuaded by Defendants' assertions that it "would be subject to monetary and criminal sanctions in Germany if it discloses this information."  Dkt. # 19 at 6. First, the FDPA provides for sanctions only when the violation occurs with "commercial purposes" or "in return for payment or with the intention of enriching oneself," *see* Dkt. # 20-1, Ex. 2 at 8–10 (FDPA § 42(1)-(2)), or else with respect to consumer loan data not at issue here, *id.* (FDPA § 43).[2] Second, Defendants have not shown that its potential liability for these sanctions is anything but "slight and speculative." *See BrightEdge Techs.*, 2014 WL 3965062, at *5 (rejecting the same argument because the defendant did not "provide[] any argument as to whether parties in its position have been fined or prosecuted for disclosing personal data under similar circumstances").

## IV

### CONCLUSION

For the reasons above, the Court GRANTS Plaintiff's motion to compel.  Defendants are ORDERED to answer Interrogatory No. 8 by March 16, 2026.

Dated this 2nd day of March, 2026.

John H. Chun
United States District Judge

---

[2] These sections of the FDPA are reproduced in an exhibit attached to Plaintiff's counsel's declaration submitted on reply. *See* Dkt. # 20-1, Ex. 2 at 8–10. The Court cites this version of the FDPA, as there does not appear to be any reason to doubt its accuracy.

ORDER - 10